### Louis L. WALTERS
### v.
### The UNITED STATES.
### No. 313-59.

United States Court of Claims.
April 15, 1966.

Laramore, J., dissented.

---

Lawrence S. Schaffner, Washington, D. C., for plaintiff. Hyman Smollar, Washington, D. C., attorney of record.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge.

This is a suit for disability retirement pay in which plaintiff, a former naval officer, claims that he sustained two service-connected injuries to his back which rendered him permanently incapacitated for general naval service at the time of his release from active duty in June of 1946. On April 4, 1946, plaintiff was given a final type physical examination incident to his separation from serv-

ice and was found by the proper naval medical authorities to be fit and qualified to perform the duties of his office, grade, rank, or rating. Upon plaintiff's application for a correction in his records, this determination was upheld in 1957 by the Secretary of the Navy, acting through the Board for Correction of Naval Records. Plaintiff contends that the action of the Board was arbitrary, capricious, and unsupported by substantial evidence.

While on active duty in the Caribbean plaintiff sustained his initial back injury. On March 14, 1944, he was examined by a Special Board of Medical Examiners and found to be temporarily disqualified for active amphibious operations at sea by reason of low back pain, with a recommendation that he be transferred to the U.S. Naval Hospital in Bethesda, Maryland, for diagnosis, treatment, and medical advice. On March 22, 1944, plaintiff was admitted to the above-named facility for surgical observation, and in the course of examination he disclosed that he had some 2½ months earlier struck his sacrum against a bulkhead of the ship upon which he had been serving. The medical report of the examination states that from the time of this injury he had suffered an increasing amount of pain on sitting and was obliged to extend his legs to full length in order to obtain relief. After extensive studies and X-ray examination, which proved to be negative, the ultimate diagnosis was recorded as a contusion of the coccyx, and plaintiff was discharged from the hospital on April 14, 1944. On May 18, 1944, he was re-examined by a Board of Medical Examiners and found to be physically and temperamentally qualified to perform all the duties of his rank with the Amphibious Training Command, U. S. Atlantic Fleet.

On January 24, 1946, plaintiff sustained his second injury. While climbing a ladder on board the ship of which he was the commanding officer, he slipped and fell to the steel deck some eight feet below, scraping his back and arms on the rungs of the ladder and landing on his lower back. He experienced immediate pain in the sacroiliac area and was unable to walk. The next day he was admitted to the Naval Operating Base Dispensary in Guantanamo Bay, Cuba, in moderate distress and complained of pain in the lumbar region of his back. An abrasion of about 2 x 3 inches on the left side of his sacroiliac joint was found, but X-rays revealed no evidence of fracture. The diagnosis made by the medical authorities was that of a contusion—lumbar sacral, and left gluteal region. During hospitalization his general condition improved, and he was discharged a week after admittance, on February 1, 1946.

On April 2, 1946, plaintiff underwent a physical examination for a permanent commission in the U.S. Navy, and the medical report accompanying the examination noted mild tenderness over his left sacroiliac joint. Two days later, on April 4, 1946, plaintiff was given a physical examination for the purpose of separation from service and was found fit to perform active duty at sea or on foreign service and qualified to be released. No X-rays or other specialized tests were conducted at either of these two examinations in April of 1946; and there was no medical finding of pain in the lower back at the second examination, although a mild condition had been diagnosed two days earlier. The second examination also failed to take notice of plaintiff's January 1946 injury. On April 5, 1946, plaintiff was detached to terminal leave and was separated from active duty on June 6, 1946.

On April 25, 1946, a Board of Medical Examiners decided that plaintiff met the physical standards for appointment in the regular Navy, but on November 27, 1946, he was informed that his name was not included in the recommendation of the Selection Board for appointment to a commission.

Plaintiff was examined by the Veterans Administration on July 20, 1948, and gave a history of continuous and occasionally severe low back pain. He was awarded a combined disability rating of 30 percent, effective March 25, 1948—20

percent for chronic lumbosacral strain and 10 percent for complications arising from a fracture of his left knee sustained in an automobile accident in 1942. These ratings were confirmed and continued on January 18, 1954, after another examination.

On March 15, 1954, after having submitted a request for transfer to the Standby Reserve (Active Status), plaintiff was informed by the commandant of the Third Naval District in New York City that he had been found physically disqualified for active naval service because of the injuries to his knee and back and was requested to report to the U. S. Naval Hospital in St. Albans, New York, for further examination and orthopedic consultation. In April of 1954, plaintiff was admitted to a Veterans Administration hospital in New York City, complaining of low back pain. There he remained for two weeks, and the final diagnosis was recorded as a suspected herniated dislocated disc between L4 and L5. On July 9, 1954, he was once again examined by the Veterans Administration, and his disability evaluation was increased from 20 percent to 40 percent for his back condition. The 10-percent rating for his knee was discontinued at this time.

On September 21, 1954, plaintiff was examined at the U. S. Naval Hospital at St. Albans, as requested, for retention in the Naval Reserve, and the consultation report of the orthopedic service stated that he had a probable herniated disc. On October 15 of that year, plaintiff was honorably discharged from the Naval Reserve.

On December 10, 1954, the Bureau of Medicine and Surgery issued a report on plaintiff's physical condition, and stated that, although he had certain impairments which would disqualify him for original appointment under the relevant standards then in effect, these infirmities would not disqualify him for retention in the Naval Reserve or for orders to active duty—provided a waiver were issued for his low back syndrome and his defective knee. The Bureau concluded that plaintiff's condition was sufficiently serious that he should be considered physically qualified for active duty incident only to mobilization.

On September 16, 1954, plaintiff filed an application with the Board for Correction of Naval Records, contending that due to his medical history and the corresponding development of acute back disorder his records should be altered to reflect permanent physical disability as of the time of his release from active duty in 1946. The Correction Board thereupon referred the application to the Naval Retiring Review Board for an advisory opinion on the matter and directed that plaintiff's Veterans Administration records be examined. The Retiring Review Board conducted a hearing in the case in September of 1955 at which plaintiff, accompanied by counsel, appeared, testified, and introduced documentary evidence. Included among the documents introduced was an affidavit of Dr. Samuel B. Burk, a physician and surgeon who had treated plaintiff for his knee fracture as a naval medical officer in 1942 and had examined and treated him for his back condition as a private doctor in the latter part of April 1946, and at various times thereafter. It was Dr. Burk's expressed opinion in this affidavit that plaintiff suffered from a ruptured intervertebral disc which had been caused by the shipboard injuries received in 1944 and 1946, and that this was a permanent condition which existed at the time of his separation from service and was of such a disabling character at that time as to have required his disqualification from active duty. At the hearing plaintiff testified that he had experienced intermittent episodes of pain in his lower spine and extremities and had been compelled to wear some sort of supportive apparatus for his back ever since he sustained his injuries. He stated also that he had not been free of back trouble since these occurrences and had had to miss a substantial amount of time from work. After deliberating on the evidence before it, the Retiring Review Board concluded that at the time of release, on June 6, 1946, plaintiff was suf-

fering from a certain amount of low back pain and from the residual effects of a knee operation, but that these conditions were not of such a permanent, incurable, or incapacitating character as to disqualify him for active naval service within the meaning of the pertinent retirement laws.

On March 26, 1956, the Correction Board itself held a hearing on plaintiff's case, with plaintiff again appearing in person and testifying in much the same manner as before the Retiring Review Board. At the conclusion of this proceeding the Correction Board referred the relevant records and transcript of testimony to the Bureau of Medicine and Surgery for an advisory opinion. On February 20, 1957, the Bureau returned a detailed report to the Correction Board in which it took account of plaintiff's naval medical records, his Veterans Administration records, and the statement of his personal physician, and decided that, "the greater weight of the evidence supports the conclusion that [plaintiff] was, when released from active duty on 6 June 1946, physically fit for full duty and that he remained fit for duty for a considerable period of time thereafter." The report stated that there was no competent evidence to support the contention that plaintiff had sustained a herniated intervertebral disc until at least eight to ten years after his release, and that inasmuch as X-ray evidence in the case was inconclusive and plaintiff had refused to submit to myelographic studies, it could not be stated with certainty that he had sustained a herniated intervertebral disc even as of 1954.

The Correction Board and the Secretary of the Navy adopted the finding of the Bureau of Medicine and Surgery that plaintiff was physically fit and qualified for duty at the time of release, and plaintiff was correspondingly advised on March 21, 1957, that the request for correction of his naval records had been denied. On June 16, 1958, plaintiff petitioned the Correction Board for reconsideration of his case and accompanied his plea with additional evidence and affidavits, including a statement by Dr. Thomas Q. Garvey, a specialist in neurosurgery who examined plaintiff in 1958 and determined that he suffered from a ruptured intervertebral disc which developed slowly and progressively from the date of his initial back injury in 1944 and would have rendered him unfit for active duty at least as early as April of 1946. The Board decided, however, that the new evidence presented was purely retrospective in nature and constituted at best merely a difference in medical judgment which might well have been based upon erroneous criteria of incapacity for naval service. Consequently, the Board declined to change its prior determination, and on August 13, 1958, it notified plaintiff that his case would not be reopened.

■ This court will not undertake to determine at first hand who is fit or unfit for military service, for that is the proper function of the respective military departments. Furlong v. United States, 153 Ct.Cl. 557 (1961); Johnson v. United States, 149 F.Supp. 648, 138 Ct.Cl. 81 (1957), cert. denied, 355 U.S. 850, 78 S. Ct. 69, 2 L.Ed.2d 54. In order to prevail in the case at bar, plaintiff must establish that the decision of the Secretary of the Navy, acting through his designated representatives, to deny him retirement rights was arbitrary, capricious, unsupported by substantial evidence, or not in accordance with applicable laws, regulations, or policies. Stephens v. United States, 358 F.Supp. 951, 174 Ct. Cl. —— (February 1966); Furlong v. United States, supra; Wales v. United States, 130 F.Supp. 900, 132 Ct.Cl. 765 (1955). The thrust of plaintiff's argument, then is properly concentrated upon the action of the Board for Correction of Naval Records in refusing to conclude on the basis of all the evidence before it that plaintiff was, at the time of his separation from active duty, permanently disabled as a result of service-connected injuries. Plaintiff contends, in essence: (1) that the record proves that he sustained a herniated intervertebral disc prior to his release; (2) that the naval

medical authorities should have given him a more comprehensive physical examination in light of his history of back injury while in service; (3) that if this had been done the full nature and extent of his condition (allegedly a herniated disc) would probably have been disclosed, and (4) that the existence of this condition would have entitled him to retirement by reason of physical disability.

The evidence submitted to the Board for Correction of Military Records included plaintiff's entire naval medical history and numerous reports and affidavits relating to his physical condition subsequent to release. The Board, thus, had before it a reasonably complete description of plaintiff's condition up through March of 1956, and upon reconsideration of the case it was presented with additional evidence covering the early part of 1958. Upon reviewing all the evidence which was before the Board, the conclusion seems inescapable to us that plaintiff was suffering from a herniated intervertebral disc at least as early as 1954. The Correction Board did not make a specific finding concerning this period, being content to dismiss plaintiff's application on the grounds that he had not established disability as of 1946. The advisory opinion of the Bureau of Medicine and Surgery, upon which the Correction Board based its conclusions, however, discussed the question of plaintiff's condition in 1954 and refused to concede either that plaintiff had definitely sustained a herniated disc as of that date or that such a condition, if indeed present, had been precipitated by the traumatic injuries to his lower back incurred while on active duty. To the extent that they deny the existence in 1954 of a disabling herniated disc, these conclusions are unreasonable and contrary to the overwhelming weight of the evidence. Such evidence is summarized in the following paragraph.

In March of 1954 plaintiff was advised by the Navy that he had been found unfit for active naval service. In April of 1954 he was admitted to a Veterans Administration hospital, complaining of severe pain in his lower back. The clinical record accompanying this hospitalization, as noted before, disclosed that a herniated dislocated disc was suspected. In July plaintiff was given a physical examination by the Veterans Administration, at which time he claimed that he was suffering from severe pain in the lower back, often radiating down his legs as far as the ankles. In August the Administration increased the disability rating for his back from 20 percent to 40 percent. On September 21, 1954, the U. S. Naval Hospital at St. Albans diagnosed a probable herniated disc in plaintiff's case, and in October he was honorably discharged from the Naval Reserve. In December of 1954, the Bureau of Medicine and Surgery rated plaintiff physically qualified for recall to active duty incident only to mobilization. X-ray examinations taken in this year, moreover, showed a disturbance in the normal curvature of the spine and some narrowing of the intervertebral space between the fifth lumbar (L5) and the first body of the sacrum (S1). In addition, Dr. Burk, plaintiff's private physician, stated by way of affidavit to the Correction Board that his personal examinations of plaintiff throughout the years prior to 1954 strongly indicated the presence of a progressively disabling herniated disc. Thus, on the basis of the evidence before it—the separate but concurring diagnoses of the Veterans Administration and the U. S. Naval Hospital, the results of the X-ray examinations, the pains and symptoms noted in the various medical reports submitted, and the statement of plaintiff's personal physician—the Correction Board could reasonably only have concluded that plaintiff was suffering from a disabling herniated intervertebral disc in 1954.

In view of the evidence before the Board, there is little doubt, also, that this condition grew out of plaintiff's service-connected injuries. Plaintiff, as the record indicates, sustained a traumatic in-

jury to his lower back in 1944 upon striking the bulkhead of a vessel. In January of 1946, he fell from a ladder and injured the same area of his back. Subsequent to both incidents he suffered pain, and after the latter he was incapacitated for about a week. An examination taken on April 2, 1946, disclosed mild tenderness over the left sacroiliac joint, although plaintiff was found fit for active duty two days later. He continued to experience a certain amount of pain and discomfort, and two years later, in 1948, he was awarded a 20-percent disability rating for his back by the Veterans Administration. (This was increased to 40 percent in 1954.) His condition has deteriorated progressively ever since, and he has apparently suffered an increasing degree of pain and disability. There is no evidence of his having incurred any independent blow or injury at any time since release from the service. Hence, the chain of causation can be traced back to plaintiff's original injuries of 1944 and 1946.

It is not enough, however, for plaintiff merely to show that his service-connected injuries resulted in an eventually disabling condition or that at the time of release from active duty this condition was in an incipient stage of pathological development. Plaintiff must proceed one step further and establish that the condition was of such extent and severity as to actually render him unfit for active naval service at the time of his release or shortly thereafter. Stone v. United States, 160 Ct.Cl. 128 (1963). On the basis of the evidence before the Board, as reinforced by the expert testimony adduced at the trial in this court, we feel that plaintiff has satisfactorily carried this burden and has shown that the decision of the Correction Board, to the effect that he was fit and qualified for general duty in June 1946, was unsupported by substantial evidence and was arbitrary.

Prior cases in this court have demonstrated that a herniated intervertebral disc is an exceedingly difficult condition to diagnose and may not be discovered for a number of years after the occurrence of the traumatic injury which is alleged to have precipitated it. See Stone v. United States, supra; Harper v. United States, 310 F.2d 405, 159 Ct. Cl. 135 (1962); Farrar v. United States, 358 F.Supp. 965, 173 Ct.Cl. —— (December 1965). X-ray examinations may be helpful in discovering the illness but are often inconclusive. The symptoms which accompany the condition, moreover, may be indicative of a variety of other conditions and illnesses. Due to this inherent uncertainty of diagnosis and the natural limitations of normal medical methods of discovery, even the most careful and thorough physician may fail to disclose the true nature and extent of a patient's condition. Under the circumstances, it may well have been reasonable for the naval medical officials in 1946 to regard plaintiff's disabilities as resulting from nothing more than a strain or contusion of his lumbar sacral area. This conclusion is buttressed by the fact that no truly reliable diagnosis of a herniated disc was rendered in plaintiff's case until 1954—some eight years after release from active duty.

■ The test for recovery, however, does not rest solely on the reasonableness of the action of the examining physicians at the time of release from active duty. The petitioner may prevail if he can show that if the complete facts concerning his condition had been known at that time he would have been entitled to retirement by reason of physical disqualification under the pertinent laws and regulations. Harper v. United States, supra; Stone v. United States, supra; Farrar v. United States, supra. To this end, reference must of necessity be made to his subsequent medical history insofar as it sheds light on the nature of his physical condition while in service. Evidence of progressive deterioration and later discovered symptoms and disabilities may be decisive if it can establish that plaintiff's incapacity while in service was substantially more serious than suspected and

that previous diagnoses were inadequate or incorrect. Harper v. United States, supra.

Taking into consideration the strong showing made by plaintiff before the Correction Board and at the trial in this court, we feel that the decision of the Board was unsupported by substantial evidence. The Government's case rests primarily upon the fact that plaintiff's service medical records, particularly his 1946 termination physical examination, fail to disclose the presence of a serious or incapacitating condition and that no certain diagnosis of a herniated intervertebral disc was recorded until 1954. But as we have pointed out, the inherent difficulty of diagnosis in such a case tends to detract substantially from the persuasiveness of such evidence. Plaintiff's April 4, 1946, separation examination can be described as routine at best. No X-rays or other specialized tests were conducted, and the medical report fails even to note plaintiff's January 1946 fall from a shipboard ladder or the fact that just two days before, on April 2, 1946, a separate physical examination had disclosed tenderness over the left sacroiliac joint (the same area as that injured in the fall four months earlier). Yet, even if plaintiff's medical history had properly put the naval medical authorities on notice to afford him a more thorough physical examination upon discharge than the one he was actually given, it cannot be stated with certainty that they would in fact have discovered the true nature of his back condition at that time.

The evidence presented to the Correction Board some nine years later, however, establishes in retrospect quite clearly that plaintiff's condition was incapacitating and permanent. Both before and shortly after his release from service, plaintiff had experienced periodic episodes of severe pain, discomfort, and immobility, and had to wear supportive devices and take heat and board treatments to correct his back disorder. Plaintiff testified at the hearing and reported on medical forms that he had had to curtail and rearrange his normal civilian activities and employment and had missed a substantial amount of work (as much as 1½ to 2 months per year). Dr. Burk, who examined and treated plaintiff continuously from a date prior to his release from service, stated contemporaneously with an examination of plaintiff in April 1946 (before separation) "that the findings, the phenomena associated with the examination, indicated that he sustained an injury in the lumbar area involving the lumbar intervertebral discs." Two years after release, in July of 1948, Dr. Burk prepared a statement based on X-ray and personal examination of plaintiff and noted a disturbance of the normal curvature of the spine, a marked narrowing of the intervertebral space between the fifth lumbar and the first body of the sacrum, and substantial distress incurred in performing routine physical exercises. It was also remarked that the right hip and left shoulder were higher than the corresponding places on opposite sides of the body, with an associated scoliosis accompanying the same. The patient was reported as having complained of great pain in the lower back and extremities and of losing from one to three days of employment per week. Dr. Burk's opinion at the time was that the patient had a "definite low back condition which became aggravated by the fall he had shortly prior to release from active duty." At approximately the same time as this examination, the Veterans Administration also examined plaintiff and later awarded him a 20-percent disability rating for his back.

Reconstructing plaintiff's medical condition in the light of subsequent development and deterioration necessarily involves a certain degree of conjecture; but the evidence presented before the Board establishes with clarity that plaintiff's service medical records were critically inadequate and that he had a permanent and incurable condition at the time of his release, which would, if all the facts had then been known, have dis-

qualified him from active duty.[1] Plaintiff certainly had a herniated disc by 1954, and the record suggests no other causes to have precipitated this condition than the 1944 and 1946 shipboard injuries to his lower back. The evidence establishes also that several of the symptoms of this permanent and incapacitating condition were readily apparent and were actually reported before and shortly after his release from active duty. The fact that no definitive diagnosis of a herniated disc was rendered until 1954 can be explained, as noted previously, by the uncertain nature of the malady and the unreliable nature of the normal methods of medical discovery. In reaching the decision that plaintiff was fully fit and qualified to perform general naval duty in June of 1946, the Correction Board must have disregarded the greater part of plaintiff's testimony, the affidavits and reports prepared by his personal physician and other doctors, the reports of illness, pain, and immobility made contemporaneously with physical examinations conducted in 1946, 1948, and thereafter, and the relevant Veterans Administration and other post-1946 official medical records in the case revealing that plaintiff's condition was substantially more serious than his naval records up to 1946 indicated. The Board acted contrary to the substantial weight of the evidence before it when it refused to find that at the time of his separation plaintiff was permanently incapacitated for general naval service as contemplated by the applicable statute and regulations.

This conclusion is reinforced by the expert testimony produced at the trial in this court. Both of plaintiff's professional witnesses (Drs. Burk and Korengold) confirmed that plaintiff probably had a herniated disc which was incapacitating at the date of release. Defendant's two medical witnesses (Drs. Brown and Mackie) testified to the contrary, but expressed certain reservations. Dr. Brown based his opinion on incomplete medical records in plaintiff's case up to, but not after, April 4, 1946. He conceded that plaintiff probably had a herniated disc as of 1954 and that he might well have had it in 1946 also, if it could be shown that he was in constant pain between the 1944 and 1946 injuries. Dr. Mackie also grounded his opinion on plaintiff's medical records up to April 4, 1946, and stated that on the basis of the medical records subsequent to that date plaintiff "may have had * * * a ruptured intervertebral disc."

Judgment is entered for plaintiff for disability retirement pay from the date of his release from the Navy, with the amount of recovery to be determined pursuant to Rule 47(c) (2).

LARAMORE, Judge (dissenting):

I respectfully dissent for this reason: To recover, plaintiff must prove that at the time of his release he was not only unfit for service but that his incapacity was service-connected.

I think plaintiff has failed in his burden to prove that he in fact had a permanent incapacitating herniated disc at the time of his release. All the medical findings merely disclose that he had a *probable* herniated disc. Under these circumstances I cannot say that the action of the Secretary of the Navy, acting through the Naval Retiring Review Board and the Board for Correction of Naval Records, was arbitrary, capricious, erroneous in law, or contrary to the evidence. Accordingly, I would dismiss plaintiff's petition.

---

1. See Section 964 of Naval Courts and Boards (1937). In view of the fact that plaintiff's condition has continuously and progressively worsened since 1946, there is little doubt that it is both permanent and incurable. There is no competent evidence in the record to indicate that plaintiff's disease could have been cured or relieved to the point where he could have been qualified to perform all the activities of an officer of his rank on general active duty.